51 CCPA
**Application of Edward C. RANKIN.**
**Patent Appeal No. 7013.**

United States Court of Customs
and Patent Appeals.
Dec. 12, 1963.

Callard Livingston, Chicago, Ill. (J. William Pike, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for Commissioner.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

ALMOND, Judge.

This is an appeal from the decision of the Board of Appeals holding that appellant's claims 1–4 and 8 are unpatentable over prior art. No claims were allowed.

The invention relates to a latch means for a loose-leaf binder. The binder is adapted to be opened to one of two different positions. In the first, or "reading" position, the binder is partly open to permit observation of the pages but the prongs are still closed to retain the pages in the binder. The second position is fully open to permit insertion and removal of the pages. The disclosed latch means prevents the binder from opening from either the fully-closed position or the reading position unless a latch rod is released.

Figure 3 of the drawing illustrates the binder in the reading position without the covers attached.

FIG. 3

This figure shows one of a plurality of prong units comprising two half ring sections 10 and 10A which are hinged about a common pintle 30 running the length of the binder. A latch rod 22 is pivotally secured to the left ring half as indicated at 23 and is spring-urged towards the pintle 30. The opposite coordinating ring half has cam surfaces 15 and 18, and latch engaging stops at 16 and, in the figure shown, where latch 22 is engaged. The stops operate with latch 22 to hold the rings in the fully-closed or in the partly-open reading position. To remove the latch from the stop, a finger release lifts the latch rod. The covers of the binder are attached to the generally C-shaped channel members 41 which, in turn, are attached to the heel portion of the prong units at 44 by retaining rods 46. When the binder is fully closed, latch rod 22 engages stop 16 to lock the binder shut. It is noted that the prong units and associated latching means are independent of the covers and channel members insofar as binding the loose-leaf pages is concerned.

Claim 1 is illustrative and reads:

"1. In a loose-leaf binder having sets of juxtaposed opposite acting arcuate prong units each having a diametrically-directed foot part which is joined to a common central hinge axis at a point on the said foot parts which is concentric of the respective prong arcs, latching means comprising, namely: a long latch member rockably supported by and between the foot parts of two or more of said supporting prong units which are all disposed on one particular side of said hinge axis so that the rocking axis of the latch member is substantially parallel to said hinge axis, said latch member having a portion offset radially of its own rocking axis to move in a direction approximately radially toward and away from said hinge axis; and a latch formation on an endwise foot portion of at least one companion prong to one of said supporting prongs and providing at least one latching stop formation removably engageable by said latching member in movement of the latter a predetermined amount toward said hinge axis, whereby to prevent pivotal movement of said prongs in a given direction beyond a predetermined angular relation; and spring means acting on said radially offset portion of the latch member yieldingly urging the same in a direction to engage and latch in said latch formation."

The issue is whether the binder structure claimed would be obvious to one having ordinary skill in the art in view of two prior art patents:

Dawson 2,528,866 Nov. 7, 1950
Chevalerias
(French) 431,410 Sept. 11, 1911

The Dawson patent discloses a loose-leaf binder comprising two metal body members hinged together and having spaced prongs welded to the body members for holding the pages. A locking mechanism is incorporated in the end plates of the body members. The end plate of one of the body members is shaped to provide two shoulders for engaging a latch member attached to the opposite body member. The latch member terminates on one end in a detent for engaging the shoulder of the end plate and on the other end in a finger means for releasing the detent from the spring-urged latching relationship. The binder may be latched in a reading position or a fully-closed position, depending on which shoulder is engaged by the detent. The binder may also be fully opened for removal of pages.

The Chevalerias reference discloses a loose-leaf binder in which seven hinges are employed to provide a flat and smooth back for the binder to obviate the problems of a "broken back" arising from having a central hinge encased in the back of the binder, as in the prior art. As does Dawson, Chevalerias employs two body members hinged together and bearing spaced prongs for holding the pages. The latching means comprises a shoulder formed in the end plates of one of the body members which is engaged by a spring-urged bail which runs the length of the binder and is attached to the opposite body member.

In affirming the examiner's rejection predicated on the prior art, the Board of Appeals said:

"The appellant argues that the Chevalerias rings must be used with the bed plates whereas his device operates as a unit separate from the bed plates. The appellant states that the claimed structure provides a latch means which can lock up each pair of prongs individually.

"We are not impressed by appellant's argument since there appears to be no reasons [sic] for actuating the rings independently. Furthermore, appellant discloses his rings as being pinned by means of rods 46 to the bed plates so that the rings of a unit will act in unison.

We cannot see that such structure is unobviously different from the Chevalerias structure wherein the prongs are secured to the bed plates adjacent to the end plates. Such end plates in the Chevalerias device are used in the same general manner as the leg and chord members of appellant's device.

"We agree with the Examiner that it would be obvious to use multiple latches of the Dawson type on the Chevalerias end pieces. It is pointed out that the Dawson latch provides for a closed position, a reading position and an open position. Also, the Dawson latch specifically provides for closing the binder without manually actuating the pawl member."

Appellant argues that his unitary, foot-pivoted prong units which may be locked up are new in the art; that latching of the prongs by a rod supported by and between the foot parts of the prongs is a new concept; that latch and prong stresses are distributed throughout the assembly instead of being concentrated at the end wall latches and welds of the prongs to the metal halves or "cradles"; and that the "cradle" type construction is eliminated.

The solicitor contends that appellant's claim 1 is so broad as to embrace a construction where only a single prong set has a stop formation cooperable with the latch rod, although he concedes that the claims "have not been rejected as unduly broad, incomplete or lacking in utility." It is the solicitor's position that the prongs attached to the metal body members, considered with the end plates having the stop formation and the pivot point for the bail or latch rod, are equivalent to the claimed latch means on prong units.

We are of the opinion that the differences between the claimed construction and the references of record are not such that the subject matter would be obvious to one having ordinary skill in the art. The board, in seeking "reasons for actuating the rings independently," overlooked the possible accidental independent movement of the prong units. If the binder is dropped and one prong unit of appellant's device becomes unlatched, the other units are not necessarily unlatched. On the other hand, if the body members of the prior art devices become unlatched, all of the prongs would necessarily be unlatched because the latching function is carried out at a different point than the page binding function. By latching and binding the pages in the same prong unit, twisting or warping of the backing of the binder will not have the same effect as in prior art binders.

Both of the prior art references relate to a different type of construction from appellant's wherein light-weight channel members may be attached to the prong units. The claims do not recite channel members or a backing, but only the prong units with the specific latching means joined to a common hinge axis.

We are not prepared to equate the prongs attached to the hinged metal cradles having latching means in the end walls, as in the prior art, to the prong units of the claims to which light-weight channels may be attached. The prior art shows no "foot parts" to "prong units," or a latch rod "supported by and between the foot parts," or a latching stop formation on one *foot part* with a latching formation on the companion *foot part*, all of which are claimed. While the latching means of Dawson is similar to that disclosed by applicant in that it has two stop formations, neither reference has any disclosure of the latching means with a long latch rod in what appellant calls a "floating ring" binder as embraced by the claims. We think the claims, read in the light of the specification and drawing, are drawn to a structure where the prong units "float" about a common hinge axis. Since the type of binder claimed is not taught by the prior art, the decision of the board is reversed.

Reversed.